```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - x
                                    :
UNITED STATES OF AMERICA            :    INDICTMENT
                                    :
          - v. -                    :    20 Cr. ___
                                    :
JEFFREY HASTINGS,                   :
                                    :
          Defendant.                :    20 CRIM 534
                                    :
- - - - - - - - - - - - - - - - - - x
```

COUNT ONE
(Conspiracy to Commit Securities Fraud and to
Make False Filings with the SEC)

The Grand Jury charges:

**Relevant Individuals and Entities**

1. At all times relevant to this Indictment, SAExploration Holdings, Inc. ("SAEX" or the "Company") was a publicly-traded seismic data acquisition company headquartered in Houston, Texas. SAEX's securities traded under the symbol "SAEX" on the NASDAQ. SAEX provided land and marine-based seismic acquisition services including program design, planning and permitting, camp services, survey, drilling, recording and processing. Seismic data is used by oil and gas companies to identify and analyze drilling prospects and maximize successful drilling.

2. At all times relevant to this Indictment until in or about August 2016, JEFFREY HASTINGS, the defendant, was the Executive Chairman of the Board of Directors of SAEX. At all times relevant to this Indictment after in or about August 2016, until

1

his separation from the Company in or about August 2019, HASTINGS served as both the Chairman of the Board of Directors and the Chief Executive Officer ("CEO") of SAEX.

3. At all times relevant to this Indictment until his separation from the Company in or about August 2019, a co-conspirator not named as a defendant herein ("CC-1") was the Chief Financial Officer ("CFO") and the General Counsel ("GC") of SAEX.

4. At all times relevant to this Indictment until in or about August 2016, a co-conspirator not named as a defendant herein ("CC-2") was President and CEO of SAEX. At all times relevant to this Indictment after in or about August 2016, until his separation from the Company in or about December 2019, CC-2 was the Chief Operating Officer ("COO") of SAEX.

5. At all times relevant to this Indictment until in or about August 2016, a co-conspirator not named as a defendant herein ("CC-3") was the Executive Vice President of Operations at SAEX. At all times relevant to this Indictment after in or about August 2016, until his separation from the Company in or about September 2020, CC-3 was the Senior Vice President of Operations at SAEX.

6. At all times relevant to this Indictment, beginning in or about May 2015, Alaskan Seismic Ventures, LLC ("ASV") was a seismic data library company incorporated in Alaska that purchased seismic data from SAEX and licensed that data to third parties, namely oil and gas companies.

7. At all times relevant to this Indictment, beginning in or about September 2015, Global Equipment Solutions ("Global Equipment") was a company incorporated in Delaware that purportedly rented seismic acquisition equipment to SAEX. Global Equipment was controlled by JEFFREY HASTINGS, the defendant, and CC-1.

### Public Company Reporting Requirements

8. At all times relevant to this Indictment, SAEX was required to comply with the federal securities laws, which are designed to ensure that a publicly traded company's financial information is accurately recorded and disclosed to the investing public. Specifically, pursuant to the Securities Exchange Act of 1934 and the rules and regulations promulgated thereunder, SAEX was required to: (a) file with the United States Securities and Exchange Commission (the "SEC") annual financial statements (on SEC Form 10-K); and (b) file with the SEC quarterly financial reports (on SEC Form 10-Q).

9. At all times relevant to this Indictment, from on or about August 12, 2016, JEFFREY HASTINGS, the defendant, signed SAEX's quarterly and annual financial reports in his capacity as SAEX's CEO. Additionally, SAEX filed with each of its quarterly and annual financial reports certifications entitled "Certification of Chief Executive Officer Pursuant to Section 302

of the Sarbanes-Oxley Act of 2002" ("Section 302 Certification") in which HASTINGS certified, in part:

    a.   "I have reviewed this [quarterly or annual] report . . . of SAExploration Holdings, Inc.;"

    b.   "Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;" and

    c.   "Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report[.]"

    10.   At all times relevant to this Indictment, from on or about August 12, 2016, in conjunction with each of its quarterly and annual financial reports, SAEX included a second set of certifications entitled "Certification Pursuant to 18 U.S.C. Section 1350 As Adopted Pursuant to Section 906 of the Sarbanes-Oxley Act of 2002" ("Section 906 Certification"), in which JEFFREY HASTINGS, the defendant, further certified, in part, that the quarterly or annual financial report: "[F]ully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and . . . the information contained in the Report

4

fairly presents, in all material respects, the financial condition and result of operations of the Company."

11.  At all times relevant to this Indictment, among the most critical financial metrics disclosed in SAEX's public filings with the SEC were SAEX's quarterly and annual revenue.

### Overview of the Schemes to Defraud

12.  From at least in or about October 2015 through at least in or about May 2019, JEFFREY HASTINGS, the defendant, together with CC-1, CC-2, and CC-3, devised and carried out a scheme to defraud SAEX, its shareholders, its bondholders, and the investing public by (a) causing SAEX to make approximately $12 million in payments to Global Equipment, a shell company secretly controlled by HASTINGS and CC-1, based on fictitious purchase orders and invoices for seismic equipment rentals; (b) routing approximately $5.8 million of the money belonging to SAEX from Global Equipment to ASV under the guise of an equity investment for the purpose of making potential lenders believe ASV had more funds than it did so that ASV could borrow funds to pay outstanding receivables owed to SAEX; (c) engaging in what they termed "round-tripping" by routing the approximately $5.8 million of SAEX funds through ASV back to SAEX to pay outstanding receivables; (d) artificially and materially inflating SAEX's reported revenue by making it appear that ASV was a significant source of independent revenue when, in fact, and as hidden from investors, ASV was not independent of

5

SAEX and did not have adequate funds to pay SAEX for seismic data; and (e) secretly misappropriating more than $5 million of the funds that SAEX transferred to Global Equipment in purported rental payments. At no time were the unwarranted payments to Global Equipment, the purported equity investment, the "round-tripping," or the misappropriation of funds disclosed to SAEX shareholders, bondholders, or the investing public.

### Impact of the Fraudulent Schemes

13. By virtue of the fraudulent schemes orchestrated by JEFFREY HASTINGS, the defendant, along with CC-1, CC-2, and CC-3, SAEX reported inflated revenue for 2015 and 2016:

| Form 10-K Reporting Period | Reported Revenue from Services | Actual Revenue from Services in Restated 10K | Fraudulent Revenue | Fraudulent Revenue as % of Actual Revenue |
|---|---|---|---|---|
| 2015 | $228,137,000 | $171,344,000 | $56,793,000 | 33.2% |
| 2016 | $205,564,000 | $161,615,000 | $43,949,000 | 27.2% |

14. On or about August 15, 2019, after market close, SAEX issued a press release (the "August 15 Press Release") announcing, among other things, (i) an SEC investigation into "accounting matters that arose in 2015-2016;" (ii) that SAEX planned to restate its previously issued financial statement for the fiscal years ended December 31, 2015 through 2018 and for the quarters ended June 30, 2015 through March 31, 2019; and (iii) that the decision to restate "arose from the Company's re-evaluation of its relationship with [ASV]." At the end of the trading day on August

15, 2019, SAEX's stock price closed at $3.25. On August 16, 2019, SAEX filed a Form 8-K, incorporating the August 15 Press Release, and SAEX's stock price dropped to close at $2.22, an approximately 32% decrease from the previous day's closing price.

**HASTINGS Invents a Cover Story and Creates Fictitious Documents in an Effort to Legitimize the Payments to Global Equipment**

15. In or about August 2019, JEFFREY HASTINGS, the defendant, along with CC-1, CC-2, and CC-3, met at a hotel in Toronto, Canada to discuss an investigation being conducted by SAEX's outside counsel ("Outside Counsel") into the conduct described in this Indictment. HASTINGS, CC-1, CC-2, and CC-3 discussed what they would tell Outside Counsel about the $12 million that SAEX had paid to Global Equipment. HASTINGS proposed a cover story, according to which the payments to Global Equipment would be described as compensation that SAEX was obligated to pay HASTINGS as consideration for his assignment of a contract to SAEX in 2011 (the "Contract Assignment"). In truth and in fact, and as HASTINGS, CC-1, CC-2, and CC-3 well knew, HASTINGS was not due to receive any compensation from SAEX for the Contract Assignment.

16. In or about August 2019, in an effort to support the cover story, JEFFREY HASTINGS, the defendant, created and caused to be created fictitious documents, back-dated to 2011 and 2015, that purported to show that SAEX agreed to pay HASTINGS a $12 million "transfer fee" as consideration for the Contract

Assignment, and provided, and caused to be provided, such false and fraudulent documents to Outside Counsel.

## Statutory Allegations

17.  From at least in or about February 2015 through in or about May 2019, in the Southern District of New York and elsewhere, JEFFREY HASTINGS, the defendant, and others known and unknown, including CC-1, CC-2 and CC-3, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit offenses against the United States, namely (a) to commit securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5; and (b) to make false and misleading statements of material fact in applications, reports, and documents required to be filed with the SEC under the Securities Exchange Act of 1934 and the rules and regulations thereunder, in violation of Title 15, United States Code, Sections 78m(a) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.12b-20, 240.13a-1 and 240.13a-13.

### Objects Of The Conspiracy

18. It was a part and an object of the conspiracy that JEFFREY HASTINGS, the defendant, and others known and unknown, including CC-1, CC-2, and CC-3, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails, and of the facilities of national securities exchanges, would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, in violation of Title 15, United States Code, Sections 78j(b) and 78ff.

19. It was a further part and an object of the conspiracy that JEFFREY HASTINGS, the defendant, and others known and unknown, including CC-1, CC-2, and CC-3, willfully and knowingly, would and did make and cause to be made statements in reports and documents required to be filed with the SEC under the Securities Exchange Act of 1934 and the rules and regulations promulgated thereunder, which statements were false and misleading with respect to material

9

facts, in violation of Title 15, United States Code, Sections 78m(a) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.12b-20, 240.13a-1 and 240.13b-13.

### Overt Acts

20. In furtherance of the conspiracy and to effect the illegal objects thereof, JEFFREY HASTINGS, the defendant, along with CC-1, CC-2, and CC-3, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

    a. On or about May 13, 2015, CC-1 sent an email message, via SAEX's email servers located outside the state of New York, to a portfolio manager at a hedge fund located in New York, New York, in which CC-1 falsely stated, "At this point there is an estimated equity infusion into ASV of $7M which should be more than sufficient. . . . SAE will not be participating in the equity."

    b. On or about January 27, 2016, CC-1 sent an email message, via SAEX's email servers located outside the state of New York, to several employees of a financial institution, located in New York, New York, soliciting that institution's investment in ASV. In the email message, CC-1 falsely stated that he had "no interest or dealings with" a shell company that he had helped to create that had transferred more than $5 million to ASV in or about December 2015.

c.   On or about March 15, 2016, HASTINGS, in his capacity as Executive Chairman of SAEX, signed SAEX's Form 10-K for 2015, which was disseminated to investors, including investors located in the Southern District of New York, by means of interstate wires, including the internet, which falsely inflated SAEX's 2015 revenue by approximately 33%.

d.   On or about August 12, 2016 and on or about November 4, 2016, in connection with SAEX's filing of its Form 10-Qs for the periods ending on June 30, 2016 and September 30, 2016, respectively, HASTINGS, in his capacity as CEO and Chairman of the Board of SAEX, signed Section 302 Certifications and Section 906 Certifications.

e.   On or about March 15, 2017, HASTINGS signed SAEX's Form 10-K for 2016, which was disseminated to investors, including investors located in the Southern District of New York, by means of interstate wires, including the internet, which falsely inflated SAEX's 2016 revenue by approximately 27%.

(Title 18, United States Code, Section 371.)

## COUNT TWO
(Securities Fraud)

The Grand Jury further charges:

21.   The allegations contained in paragraphs 1 through 16 and 20 of this Indictment are repeated and realleged as if fully set forth herein.

11

22.  From at least in or about February 2015 through in or about April 2017, in the Southern District of New York and elsewhere, JEFFREY HASTINGS, the defendant, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails and of the facilities of national securities exchanges, used and employed, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, to wit, HASTINGS engaged in a scheme to mislead the shareholders and bondholders of SAEX and the investing public by fraudulently inflating SAEX's reported revenue.

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; Title 18, United States Code, Section 2.)

**COUNT THREE**
(Conspiracy to Commit Wire Fraud)

The Grand Jury further charges:

23. The allegations contained in paragraphs 1 through 16 and 20 of this Indictment are repeated and realleged as if fully set forth herein.

24. From at least in or about February 2015 through in or about April 2017, in the Southern District of New York and elsewhere, JEFFREY HASTINGS, the defendant, and others known and unknown, including CC-1, CC-2, and CC-3, willfully and knowingly, combined, conspired, confederated, and agreed together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

Object Of The Conspiracy

25. It was a part and an object of the conspiracy that JEFFREY HASTINGS, the defendant, and others known and unknown, including CC-1, CC-2, and CC-3, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18,

13

United States Code, Section 1343, to wit, HASTINGS, and others known and unknown, including CC-1, CC-2, and CC-3, conspired to defraud SAEX and its shareholders by misappropriating millions of dollars of SAEX funds through the use of interstate wires, including emails and telephone calls to and from New York, New York, and false and misleading representations.

(Title 18, United States Code, Section 1349.)

## COUNT FOUR
### (Wire Fraud)

The Grand Jury further charges:

26.  The allegations contained in paragraphs 1 through 16 and 20 of this Indictment are repeated and realleged as if fully set forth herein.

27.  From at least in or about February 2015 through in or about April 2017, in the Southern District of New York and elsewhere, JEFFREY HASTINGS, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, HASTINGS and others known and unknown, through the use of interstate wires, including

14

emails and telephone calls to and from New York, New York, and false and misleading representations, participated in a scheme to defraud SAEX and its shareholders by misappropriating millions of dollars of SAEX funds.

(Title 18, United States Code, Sections 1343 and 2.)

## FORFEITURE ALLEGATIONS

28. As a result of committing one or more of the offenses charged in Counts One through Four of this Indictment, JEFFREY HASTINGS, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses that the defendant personally obtained.

### Substitute Assets Provision

29. If any of the above-described forfeitable property, as a result of any act or omission by the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code Section 2461, to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

    (Title 18, United States Code, Section 981(a)(1)(C);
     Title 21, United States Code, Section 853(p);
     Title 28, United States Code, Section 2461.)

_____
GRAND JURY FOREPERSON

_____ /CIM
AUDREY STRAUSS
Acting United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA

- v. -

JEFFREY HASTINGS,

Defendant.

### INDICTMENT

20 Cr. \_\_\_\_

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Sections 2, 371, 1343 & 1349.)

_____          AUDREY STRAUSS
Foreperson                         Acting United
                                   States Attorney