

SIDLEY AUSTIN LLP
787 SEVENTH AVENUE
NEW YORK, NY 10019
+1 212 839 5300
+1 212 839 5599 FAX

AMERICA • ASIA PACIFIC • EUROPE

+1 212 839 5567
JLOUGHNANE@SIDLEY.COM

November 12, 2021

Gregory H. Woods
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:  *United States v. Jeffrey Hastings*, S4 20 Cr. 534 (GHW)

Dear Judge Woods:

SAExploration Holdings, Inc. ("SAE" or the "Company")[1], respectfully submits this statement of losses suffered and expenses incurred as a result of the offenses for which Defendant Jeffrey Hastings, the Company's former executive, was convicted.

As set forth in more detail below, SAE is a victim of Hastings' crimes. The Company has suffered losses as a result of his criminal scheme, including the misappropriation of millions of dollars by Hastings and his co-conspirators. SAE has also incurred expenses during participation in the investigation and prosecution of his offenses. SAE therefore respectfully requests that the Court order restitution for these losses and expenses, pursuant to the Mandatory Victims Restitution Act. Based on conversations with the Government, SAE understands that the Government agrees that SAE is entitled to restitution for both the misappropriated funds and the expenses of participating in the prosecution. SAE and the Government are still engaged in discussions, however, about the specific billing entries and expenses that reflect the Company's participation in the investigation and prosecution.

SAE therefore requests that the Court defer determination of the amount of restitution to a date within 90 days of sentencing, and order that Hastings not dispose of, transfer, or dissipate funds, assets, or other property until his restitution obligation has been paid.

---

[1] Government documents in this case sometimes refer to the Company as "SAEX."

Sidley Austin (NY) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.

# SIDLEY

Page 2

## BACKGROUND

**I.      Hastings's Offenses and Guilty Plea**

As set forth in the criminal Information to which Hastings pled guilty (the "Information" or "Inf."), from February 2015 to May 2019 Hastings engaged in a scheme

> "to defraud [SAE's] shareholders, its bondholders, and the investing public by . . . causing [SAE] to make approximately $12 million in payments to Global Equipment, a shell company secretly controlled by [a co-conspirator] and Hastings, based on fictitious purchase orders and invoices for seismic equipment rentals."

Inf. at ¶ 12.  The fictitious invoices reflecting those payments are attached hereto as Exhibit 1 and total $12,021,958.00.

Some of this money was eventually routed back to SAE.  After the payments were made to Global Equipment, according to the Information, approximately $5.9 million of that money was paid first to a company named Alaska Seismic Ventures ("ASV") under the guise of an equity investment, and then approximately $5.8 million of that money was routed back to SAE to pay outstanding receivables.  Inf. at ¶ 12.

Hastings and his co-conspirators, however, took millions of dollars for themselves, "secretly misappropriating more than $5 million of the funds that [SAE] transferred to Global Equipment in purported rental payments."  Inf. at ¶ 12.  SAE respectfully submits that the amount misappropriated totaled $6,221,958, which is the amount of money that went to Global Equipment but was never returned to the Company (i.e., $12,021,958 transferred to Global Equipment minus the approximately $5.8 million returned to the Company via ASV.)  *See also* Complaint, *United States v. Hastings*, 20 Mag. 9706 at ¶ 28h ("Hastings failed to disclose that, of the approximately $12 million in payments that SAEX made to Global Equipment, more than $6 million was misappropriated by Hastings and [Co-Conspirator]-1 and distributed to Hastings, the Conspirators and others.").

As a result of Hastings's crimes, SAE's revenue was inflated for 2015 and 2016.  After discovering what had occurred, the Company retained forensic accounting professionals, who reviewed and analyzed over four years of financial data, and over the course of six months in 2019 and 2020 the Company prepared restated financial statements.

On August 13, 2021, Hastings admitted his conduct and pled guilty to the two-count Information.  Count One charged a conspiracy to commit securities fraud, to make false filings with the Securities and Exchange Commission, and to make false statements to auditors, in violation of Title 18, United States Code, Section 371.  Count Two charged a conspiracy to commit wire fraud, in connection with a scheme to defraud SAE and its shareholders by misappropriating

**SIDLEY**

Page 3

millions of dollars in sham rental payments to Global Equipment Solutions, in violation of Title 18, United States Code, Section 371.

## II. SAE's Participation in the Investigation and Prosecution of Hastings's Offenses

On November 1, 2017, the SEC notified SAE that it was conducting an informal inquiry to determine whether violations of federal securities laws had occurred and requested a voluntary production of documents. The Company engaged counsel to assist in its response. On November 27, 2018, the SEC issued a formal order of investigation "to determine whether any persons or entities have engaged in, or are about to engage in, [possible violations of federal securities law]." *In re SAExploration Holdings, Inc.*, No. HO-13386, Order Directing Private Investigation and Designating Officers to Take Testimony (Non-Public).

On August 9, 2019, the SEC issued a subpoena for documents to SAE. Shortly thereafter, in approximately October 2019, the United States Attorney's Office for the Southern District of New York (the "USAO") informed SAE that it was conducting its own, parallel investigation. In doing so, the USAO asked the Company to produce to the USAO all documents that SAE had produced, and would produce, to the SEC staff. Assistant U.S. Attorneys from the USAO and SEC staff then met jointly with SAE's counsel, and conducted a joint interview of a witness. SAE dedicated significant internal and external resources to responding fully to the parallel USAO and SEC investigations, and to cooperating fully in the USAO's prosecution of Hastings.

## ARGUMENT

## I. The MVRA Requires An Order of Restitution to SAE.

When a defendant is convicted of "an offense against property under [Title 18]… including any offense committed by fraud or deceit," 18 U.S.C. § 3663A(c)(1)(A)(ii), the MVRA requires an order of restitution to the victim of the offense. 18 U.S.C. § 3663A(a)(1). SAE is plainly such a victim. Hastings pled guilty to a conspiracy to commit securities fraud, to make false filings with the SEC, and to make false statements to auditors, in violation of Title 18, United States Code, Section 371. He also pled guilty to a conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 371, and the Information to which he pled was explicit that Hastings "defraud[ed SAE] and its shareholders by misappropriating millions of dollars of SAE[] funds." Inf. at ¶ 22.

Courts routinely order restitution to corporate victims in these circumstances. *See, e.g., United States v. Afriyie*, 16-CR-377 (PAE), 2020 WL 634425, at *1, *3 (S.D.N.Y Feb. 11, 2020) (finding MSD Capital, L.P. was the victim of a former employee's securities fraud and awarding restitution for attorneys' fees incurred to advance the investigation or prosecution of the offense); *United States v. Sazonov*, 17-CR-00657 (SDA), 2018 WL 922151, at *3 (S.D.N.Y. Feb. 16, 2018)

**SIDLEY**

(awarding former employer Susquehanna International Group, LLP restitution for legal fees incurred in connection with its participation in the Government's investigation and prosecution of former employee defendant); *United States v. Hatfield*, 06-CR-0550 (JS)(AKT), 2015 WL 13385926, at *12–*14 (E.D.N.Y. Mar. 27, 2015) (awarding former employer victim $23,767,864.62 in restitution for (i) legal fees the company advanced to former employee defendants ($12,509,417.70) and (ii) legal fees incurred in connection with participation in the Government's investigation and prosecution of defendants ($11,258,446.92)); *United States v. Gupta*, 925 F. Supp. 2d 581, 584, 588 (S.D.N.Y. 2013) (finding that Goldman Sachs was the victim of its former board member's securities fraud).

II. **SAE Should Be Awarded Restitution for Losses Resulting from Hastings's Offenses and Expenses Incurred in Responding to and Assisting the Government and the Court**.

A. **Losses Resulting from Hastings's Offenses**

As set forth above, Hastings engaged in a scheme "to defraud [SAE's] shareholders, its bondholders, and the investing public by . . . causing [SAE] to make approximately $12 million in payments to Global Equipment, a shell company secretly controlled by [a co-conspirator] and Hastings, based on fictitious purchase orders and invoices for seismic equipment rentals." Inf. at ¶ 12. The fictitious invoices reflecting those payments, which are attached as Exhibit 1, total $12,021,958.00. Some of that money – approximately $5.8 million – was routed back to SAE via ASV. Inf. at ¶ 12. Hastings and his co-conspirators, however, misappropriated more than $5 million for themselves. *Id*. SAE respectfully submits that the amount misappropriated totaled $6,221,958, which is the amount of money that went to Global Equipment but was never returned to the Company (i.e., $12,021,958 transferred to Global Equipment minus the approximately $5.8 million returned to the Company via ASV.) *See also* Complaint, *United States v. Hastings*, 20 Mag. 9706 at ¶ 28h ("Hastings failed to disclose that, of the approximately $12 million in payments that SAEX made to Global Equipment, more than $6 million was misappropriated by Hastings and [Co-Conspirator]-1 and distributed to Hastings, the Conspirators and others.").

In addition to the money that was simply stolen, Hastings's crimes caused additional losses by requiring a costly restatement process. SAE's revenue was inflated by Hastings's conduct for both 2015 and 2016 and needed to be restated. The Company had to hire forensic accounting professionals, who worked for six months reviewing and analyzing over four years of financial data, and over the course of six months in 2019 and 2020 the Company prepared restated financial statements. The Company also engaged an auditing firm to reaudit the financials. Billing records

# SIDLEY

and supporting documentation for these professional services, which totaled $1,266,479.10, are attached as Exhibits 2, 3, 4, and 5.[2]

The MVRA mandates restitution for the losses set forth above, which are a direct and proximate result of Hastings's crimes. 18 U.S.C. § 3663A(b)(1)(B). For these losses, SAE therefore seeks restitution in the amount of $7,488,437.10.

### B. Expenses Incurred in Responding to and Assisting the Government and the Court

Since the USAO disclosed its investigation to SAE in October 2019, SAE has assisted in that investigation, with the help of its own counsel. The MVRA provides that victims should be reimbursed for expenses "incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663A(b)(4). Courts recognize that such expenses include attorneys' fees that a "victim was required to incur to advance the investigation or prosecution of the offense." *United States v. Maynard*, 743 F. 3d 374, 381 (2d Cir. 2014).

As set forth above, based on conversations with the Government, SAE understands that the Government supports its position that SAE is entitled to restitution for the expenses of participating in the prosecution. SAE and the Government are still engaged in discussions, however, about the specific billing entries and expenses that reflect the Company's participation in the investigation and prosecution. SAE will not seek restitution here for all of the attorneys' fees it has expended as a result of Hastings's conduct. It will not, for example, seek attorneys' fees or expenses incurred before the USAO's first outreach and initial request to the Company in October 2019.[3] Nor will it seek restitution for *all* of its counsel's billings since October 2019. Instead SAE will seek restitution for those portions of its counsel's bills that reflect participation in the investigation and prosecution of Hastings's offenses, and in the closely intertwined SEC investigation after October 2019.[4]

---

[2] Billing records are generally not privileged unless they "reveal the motive of the client seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law." *Bernstein v. Mafcote, Inc.*, 43 F. Supp. 3d 109, 114 (D. Conn. 2014) (internal quotation marks omitted). To the extent any time entries or vendor bills would reveal privileged information, SAE has redacted so much as is necessary to preserve the privilege. For clarity, SAE is not waiving its attorney-client privilege and has taken all reasonable steps to preserve it. Nevertheless, in light of the legal matters discussed therein, SAE respectfully requests that the Court accept the filing of Exhibits 2-5 under seal.

[3] That is, the Company is not seeking fees incurred in connection with the Company's response to the SEC's November 2017 voluntary request for documents and its cooperation in the SEC staff's investigation prior to the start of the USAO's investigation.

[4] In *United States v. Lagos*, 138 S. Ct. 1684 (2018), the Supreme Court concluded that the MVRA's required reimbursement of expenses "during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense" pertained to expenses incurred during government investigations and criminal

# SIDLEY

Page 6

In order to complete its discussions with the Government and to provide the Court and the parties additional support for these expenses, SAE respectfully requests that determination of the amount of restitution be deferred to a date within 90 days after sentencing, and that the Court set a schedule for any additional restitution briefing before that time. *See* 18 U.S.C. 3664(d)(5) (allowing the Court to set a date for determination of victim losses up to 90 days after sentencing.)

### C. Costs of Presenting Restitution Claim

Finally, SAE seeks restitution for the attorneys' fees and expenses associated with assembling and presenting its restitution claim. *See Afriyie*, 2020 WL 634425, at *3 (permitting restitution for a victim company's attorneys' fees and expenses incurred in connection with submitting a claim for restitution). Legal fees "incurred by [a former company victim] to prepare its restitution request [a]re necessary to its attendance at the post-verdict restitution proceeding . . ., thus making them recoverable under the MVRA." *United States v. Napout*, 15-CR-252 (PKC), 2018 WL 6106702, at *4 (E.D. N.Y Nov. 20, 2018). SAE respectfully requests that it be permitted to submit these expenses in connection with the ultimate determination of its losses, on the briefing schedule set by the Court.

### D. SAE Respectfully Requests that this Court Issue an Order to Prevent Dissipation of Defendant's Assets.

Finally, in light of the substantial amount of restitution to which SAE is entitled under the MVRA, SAE respectfully requests that this Court issue an Order restraining Defendant from disposing of, transferring, or dissipating any assets except in fulfillment of his restitution obligation. This Court has the authority to enjoin Defendant from taking such actions prior to his fulfillment of a restitution debt, and such orders have been issued in this Circuit to prevent defendants from frustrating the collection of restitution payment. *See, e.g.*, *United States v. Hyde*, 556 F. App'x 62, 63 (2d Cir. 2014) (affirming district court's order restraining the defendant from liquidating any asset with a value of $500 or more except to pay restitution); *Hatfield*, 2010 WL 4235815, at *1 (finding the court has the authority to restrain assets as collateral for restitution); *United States v. Gilbert*, 92 Cr. 1001, 1993 WL 427415, at *1 (S.D.N.Y. Oct. 15, 1993) (entering a restraining order after the jury had found the defendant guilty of fraud, but before sentencing, to

---

proceedings. *Lagos*, 138 S.Ct. at 1687. As another court in this district has noted, however, "*Lagos* did not raise, and the Court there did not address, whether restitution would be permissible under the MVRA for victim expenses incurred in responding to investigations uniquely conducted by the SEC." *Afriyie* at *2. Where the investigations, however, are "parallel, coextensive, and symbiotic," and include identical document productions to the USAO and SEC, and when expenses are limited to the time period of the USAO investigation, restitution is appropriate for participation in the interrelated SEC investigation. *Id.* That is certainly the case here, where the USAO and SEC interviewed witnesses together, and each worked from a duplicate set of the documents that SAE produced, pursuant to the SEC's subpoena, to both the USAO and the SEC.

# SIDLEY

Page 7

restrain the defendant from dissipating his assets prior to the time the court entered the restitution order against him).

## CONCLUSION

For all of the foregoing reasons, SAE respectfully requests that the Court order restitution to SAE, pursuant to the Mandatory Victims Restitution Act, defer determination of the amount of restitution to a date within 90 days of sentencing, and order that Hastings not dispose of, transfer, or dissipate funds, assets, or other property until his restitution obligation has been paid.

Respectfully submitted,

*Joan Loughnane*

Joan Loughnane

cc: Jeffrey Johnston, Esq. (counsel for Jeffrey Hastings)
    Assistant U.S. Attorneys Christine Magdo and Gina Castellano